**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID RADCLIFF, individually and on behalf of all others similarly aggrieved,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY, a California corporation; SEMPRA ENERGY, a California corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:20-cv-01555-H-MSB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 7.] |

　　　　On February 27, 2020, Plaintiff David Radcliffe ("Plaintiff") filed a class action complaint against Defendant San Diego Gas and Electric Company ("SDG&E") and Sempra Energy ("Sempra") (collectively, "Defendants") in the California Superior Court, County of San Diego, alleging claims related to Defendants' employment policies. (Doc. No. 1-2.) On August 11, 2020, Defendants removed the action to federal court. (Doc. No. 1.) On September 25, 2020, Defendants filed a motion to compel arbitration. (Doc. No. 7.) On October 19, 2020, Plaintiff filed a response in opposition Defendants' motion. (Doc. No. 11.) On October 26, 2020, Defendants filed a reply. (Doc. No. 14.) The Court held a telephonic hearing on the motion on November 2, 2020. Sara Tosdal appeared on behalf of Plaintiff and Daniel McQueen appeared on behalf of Defendants. For the following reasons, the Court grants Defendants' motion to compel the arbitration of Plaintiff's non-PAGA claims.

## **Background**

Plaintiff is employed by SDG&E. (Doc. No. 11-1, Radcliffe Decl., ¶ 8.) To begin his employment, Plaintiff signed an offer letter (the "Offer Letter") dated September 1, 2006. (Doc. No. 7-2, Boland Decl., Ex. A; see also Doc. No. 11-1, Radcliffe Decl., ¶ 3.) The Offer Letter contained the following paragraph:

> Any dispute regarding any aspect of this letter of agreement or any action that allegedly violates any provision of the agreement, including any action with respect to termination of employment (an "arbitrable dispute"), will be submitted to arbitration either in San Diego, California or Los Angeles, California. Arbitration will take place before an experienced employment arbitrator licensed to practice law in the state and selected in accordance with the Model Employment Arbitration Procedures of the American Arbitration Association. Arbitration shall be the exclusive remedy for any arbitrable dispute.

(Doc. No. 7-2, Boland Decl., Ex. A.) Additionally, directly above the signature line, the Offer Letter provided the following:

> I further understand and agree that any dispute regarding any aspect of this letter of agreement or any action that allegedly violates any provision of this agreement, including any action with respect to termination of employment (an "arbitrable dispute"), will be submitted to arbitration either in San Diego, California or Los Angeles, California.

(Id.) According to the Offer Letter, Plaintiff had ten days to review the letter and decide whether to agree to its terms. (Id.)

At the outset of his employment, Plaintiff also signed[1] another agreement dated September 20, 2006, and entitled "Employment, Confidential Information and Invention Assignment Agreement" (the "Employment Agreement"). (Doc. No. 7-2, Boland Decl., Ex. B; see also Doc. No. 11-1, Radcliffe Decl., ¶ 5.) The Employment Agreement contained the following arbitration provision:

> **Arbitration.** Any dispute regarding any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement

---

[1] Plaintiff remembered receiving employment documents at a new-hire orientation and recognized the signature on the Employment Agreement as his own. (Doc. No. 11-1, Radcliffe Decl., ¶¶ 4-5.)

> ("arbitratable [*sic*] dispute") will be submitted to arbitration in San Diego, California, before an experienced employment arbitrator licensed to practice law in California and selected in accordance with the rules of the American Arbitration Association, as the exclusive remedy for such claim or dispute. Any equitable or provisional remedy that would be available from a court of law shall be available from the arbitrator to the parties to this agreement pending arbitration or as a result of arbitration.

(Doc. No. 7-2, Boland Decl., Ex. B (emphasis in original).)

On February 27, 2020, Plaintiff filed a class action complaint against Defendants in the California Superior Court, County of San Diego, alleging eleven causes of action for various violations of California law arising from his employment. (Doc. No. 1-2.) On August 11, 2020, Defendants removed the action to federal court. (Doc. No. 1.) By the present motion, Defendants ask the Court to compel Plaintiff to submit his claims to arbitration on an individual basis, except for Plaintiff's lone claim under California's Private Attorney General's Act ("PAGA"), which Defendants concede is not arbitrable. (Doc. No. 7 at 8, 17.) Defendants then request the Court to stay proceedings on Plaintiff's PAGA claim pending the completion of arbitration. (Id. at 17-18.)

## Discussion

**I.     Whether Defendants Can Compel Arbitration**

**A.     Legal Standards**

The Federal Arbitration Act ("FAA")[2] permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. The

---

[2]     The parties do not contest whether the FAA applies to this case. The FAA governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 2. The agreements in this case involve interstate commerce because they are employment-related, and Defendants operate a multi-state business. See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA."); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281-82 (1995) (explaining arbitration agreement involved interstate commerce because defendant had a multi-state business and used materials from out of state). Thus, the FAA applies.

Supreme Court has explained that the FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011). Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. A party moving to compel arbitration must show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted); see also Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014).

Fundamentally, "arbitration is a matter of contract." Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 67 (2010). Thus, courts apply state contract law to determine whether a valid arbitration agreement exists, "while giving due regard to the federal policy in favor of arbitration." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) (international quotation marks and citations omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under California law, which applies here,[3] the movant has the burden to show the existence a valid agreement to arbitrate between the parties by a preponderance of the evidence. Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 926 P.2d 1061 (Cal. 1996)). Additionally, "[a]ny doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). "While the Court may not review the merits of the underlying case in deciding a motion to compel arbitration, it may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal

---

[3] Both the Offer Letter and Employment Agreement specify that the arbitration is to take place in California and the respective agreements should be interpreted using California law. (Doc. No. 7-2, Boland Decl., Exs. A-B.) Both parties also ask the Court to apply California law in their papers where relevant. (See, e.g., Doc. No. 7 at 12; Doc. No. 11 at 9.)

quotations, citations, and brackets omitted)).

B.   **The Existence of an Arbitration Agreement Between the Parties**

In this case, there is no genuine dispute as to whether an agreement to arbitrate exists.[4] In support of their motion, Defendants submitted a declaration from SDG&E's Senior Director for Human Resources and Labor Relations, who reviewed Plaintiff's employment file and provided the Offer Letter and Employment Agreement, each of which had arbitration clauses and purportedly bore Plaintiff's signature. (Doc. No. 7-2, Boland Decl. ¶ 3, Exs. A-B; see also Doc. No. 11-1, Radcliffe Decl., ¶¶ 3-5.) Plaintiff does not argue that he never entered into these agreements. In fact, in a declaration submitted by Plaintiff, he admitted that he remembered receiving and signing an offer letter and signing other documents that could have been the Employment Agreement during an orientation session. (Doc. No. 11-1, Radcliffe Decl., ¶¶ 4-5.) Plaintiff also stated in his declaration that the signatures affixed to both the Offer Letter and Employment Agreement submitted by Defendants appear to be his own. (Id.) Therefore, Defendants have met their burden to show that an agreement to arbitrate exists. Plaintiff, however, contends that the Employment Agreement does not cover the dispute at issue and is not enforceable, and that that the Offer Letter is not controlling because the Employment Agreement is fully integrated. (Doc. No. 11 at 10-11, 14-18.)

C.   **The Scope of the Agreement to Arbitrate**

The Court turns to whether the dispute at issue falls within the scope of Employment Agreement's arbitration mandate. In pertinent part, the Employment Agreement provides that "[a]ny dispute regarding any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement . . . will be submitted to arbitration."

---

[4]   Plaintiff made certain evidentiary objections in his opposition. (Doc. No. 11-2 at 2-5.) To the extent that the Court considers the evidence objected to by Plaintiff in this Order, Plaintiff's objections are overruled. See Jenkins v. Sterling Jewelers, Inc., No. 17CV1999-MMA (BGS), 2018 WL 922386, at *3-4 (S.D. Cal. Feb. 16, 2018) (overruling similar objections with respect to the admissibility of an arbitration agreement submitted by a human-resources director). Otherwise, the Court sustains Plaintiff's objections where valid and overrules them where invalid.

(Doc. No. 7, Boland Decl., Ex. B.)  Because Defendants concede that Plaintiff's PAGA claim is not subject to arbitration, (Doc. No. 7 at 17), the Court focuses its attention on Plaintiff's remaining claims.

Whether the Employment Agreement's arbitration provision covers Plaintiff's non-PAGA claims essentially boils down its breadth.  Broadly worded arbitration clauses not only cover claims directly relating to the contract itself, but also cover claims with factual allegations that "'touch matters' covered by the contract containing the arbitration clause."  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999); see also Rice v. Downs, 203 Cal. Rptr. 3d 555, 563-64 (Ct. App. 2016) (citing Simula for this point), as modified on denial of reh'g (June 23, 2016), as modified (June 28, 2016).  In Simula, for example, the Ninth Circuit concluded that an arbitration clause mandating the arbitration of any dispute "arising in connection with" an agreement was sufficiently broad to cover factually related claims.  175 F.3d at 721.

Plaintiff argues that the Employment Agreement's arbitration clause, which requires the arbitration of any dispute "regarding any aspect of" the Employment Agreement, does not implicate Plaintiff's wage-and-hour claims brought in this action. (Doc. No. 11 at 10.) As Plaintiff explains, the Employment Agreement only "covers the requirement that Plaintiff adhere to employer-established rules of conduct, provides that Plaintiff will the [*sic*] follow certain provisions regarding confidential information and inventions, and includes non-compete and non-solicitation provisions." (Id. at 13.)  Plaintiff cites to Merriam-Webster's online dictionary, which defines "aspect" as "a particular status of phase in which something appears or may be regarded." (Id. at 13-14.)  Plaintiff then summarily concludes that this language is narrow because it "does not encompass every possible claim that could 'arise'" in connection with the Employment Agreement.  (Id.)

Perhaps tellingly, however, Plaintiff points to no cases interpreting the breadth of the words "regarding" or "aspect" in the arbitration context.  The Court is aware of no authority interpreting similar clauses using these terms as narrow.  In fact, several courts have arrived at the opposite conclusion.  See, e.g., Family Prods. LLC v. Infomercial

Ventures P'ship, No. CV 07-00926 JVS (CWx), 2010 U.S. Dist. LEXIS 154327, at *5 (C.D. Cal. Apr. 14, 2010) (holding arbitration clause covering "'any dispute regarding this Agreement,' is substantively identical to the language in Simula and therefore it must be liberally and broadly construed"); Strom v. First Am. Prof'l Real Estate Servs., Inc., No. CIV-09-0504-HE, 2009 WL 2244211, at *4 (W.D. Okla. July 24, 2009) (construing as broad an identical arbitration clause to the one in this case, which covered "[a]ny dispute regarding any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement"). Further, as a practical matter, the Employment Agreement's arbitration clause certainly is susceptible to the interpretation that it encompasses Plaintiff's wage-and-hour claims. Plaintiff's employment with SDG&E is an "aspect" of the Employment Agreement because the agreement conditions his employment on the acceptance of its terms and outlines that his employment is at will. (Doc. No. 7, Boland Decl., Ex. B.) It also would not be unreasonable to conclude that Plaintiff's wage-and-hour claims are subject to this clause because they "regard," or, in other words, are concerned with, Plaintiff's employment with SDG&E. Therefore, considering that the Court must resolve "all doubts . . . in favor of arbitrability," Simula, 175 F.3d at 721 (citation omitted), the Court concludes that Plaintiff's wage-and-hour claims fall within the scope of the Employment Agreement's arbitration clause.

### D. Whether the Agreement to Arbitrate is Enforceable

The Court then turns to whether the Employment Agreement's arbitration clause is enforceable. Plaintiff argues that the Employment Agreement is not enforceable because it is unconscionable under California law. (Doc. No. 11 at 14-18.) In California, a court may refuse to enforce a contract that "was unconscionable at the time it was made." Cal. Civ. Code § 1670.5. "[U]nconscionability has both a procedural and a substantive element . . . ." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000) (internal quotation marks omitted) (citation omitted). Both must be present for a court to refuse to enforce a contract, but they need not be present to the same degree. Id. In assessing unconscionability, courts use a sliding scale whereby "the more substantively

oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

### 1. Procedural Unconscionability

Plaintiff argues that the Employment Agreement is procedurally unconscionable because it is an adhesion contract and did not describe, or provide a reference to, the American Arbitration Association rules (the "AAA rules"). (Doc. No. 11 at 14-15.) "Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power." Baxter v. Genworth N. Am. Corp., 224 Cal. Rptr. 3d 556, 564 (Ct. App. 2017) (internal quotation marks omitted) (citing Armendariz, 24 Cal. 4th at 114). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Id.

Here, the Employment Agreement's arbitration clause has minimal procedural unconscionability. Contracts in the employment context requiring the mandatory arbitration of disputes are commonplace. "[C]ases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis." Lagatree v. Luce, Forward, Hamilton & Scripps, 74 Cal. App. 4th 1105, 1127 (1999). Therefore, absent other facts, the Employment Agreement would only be minimally procedurally unconscionable. Baltazar v. Forever 21, Inc., 367 P.3d 6, 13 (Cal. 2016).

Further, the Employment Agreement did not otherwise involve any undue oppression or surprise. The arbitration provision in the Employment Agreement was written in clear language and was printed in the same standard font as the rest of the document. (Doc. No. 7-2, Boland Decl., Ex. B.) Additionally, the term "Arbitration" at the beginning of the provision was bolded, highlighting it for the reader. (Id.) Finally, Plaintiff's assertion that SDG&E should have attached a copy of the AAA rules is unavailing given that, absent a showing of oppression or surprise, "the failure to attach a

copy of the AAA rules [does] not render [an] agreement procedurally unconscionable." Lane v. Francis Capital Mgmt. LLC, 168 Cal. Rptr. 3d 800, 812 (Ct. App. 2014); see also Baltazar, 367 P.3d at 15 (explaining that the failure to attach the AAA rules does little to affect the unconscionability analysis where the "challenge to the enforcement of the agreement has nothing to do with the AAA rules"). Therefore, the Employment Agreement is, at most, only minimally procedurally unconscionable, and only a strong showing of substantive unconscionability would render it unenforceable.

### 2. Substantive Unconscionability

Plaintiff argues that the Employment Agreement is substantively unconscionable because it lacked mutuality given that only Plaintiff agreed to its terms and that those terms were one-sided. (Doc. No. 11 at 16.) Substantive unconscionability deals with the one-sidedness of the terms in an agreement. Baltazar, 367 P.3d at 11; Armendariz, 24 Cal. 4th at 113.

> A contractual provision is not substantively unconscionable simply because it provides one side a greater benefit. The party with the greater bargaining power is permitted to require contractual provisions that provide it with additional protections if there is a legitimate commercial need for those protections, but the stronger party may not require additional protections merely to maximize its advantage over the weaker party.

Epstein v. Vision Serv. Plan, No. A155219, 2020 WL 6165494, at *10 (Cal. Ct. App. Oct. 22, 2020) (internal citation omitted in original).

Here, the Employment Agreement's arbitration clause is mutually binding. SDG&E may still be bound to the Employment Agreement's arbitration clause, even though it is not a signatory to the Employment Agreement, if SDG&E intended to be bound it under the circumstances. See Cruise v. Kroger Co., 183 Cal. Rptr. 3d 17, 23 (Ct. App. 2015) (citing Lara v. Onsite Health, Inc., 896 F. Supp. 2d 831, 844 (N.D. Cal. 2012)). In this case, SDG&E intended to be bound to the Employment Agreement's arbitration clause in part because the Employment Agreement was presented during Plaintiff's new-hire orientation, (see Doc. No. 11, Radcliffe Decl., ¶ 4-5), and clearly mentioned SDG&E's

name in its first sentence and margins, (Doc. No. 7, Boland Decl., Ex. B).  See Cruise, 183 Cal. Rptr. at 23-24 (holding employer intended to be bound to agreement to arbitrate where the agreement was "printed on company letterhead" and contained a mutually binding arbitration clause); see also Lara, 896 F. Supp. 2d at 844 (holding employer intended to be bound to agreement to arbitrate it despite not signing it in part because it was printed on company letterhead and was provided as part of a "New Hire packet").  Moreover, the language of the Employment Agreement's arbitration clause indicates that it is mutual because it broadly requires the arbitration of "any dispute."  See Roman v. Superior Court, 92 Cal. Rptr. 3d 153, 157 (Ct. App. 2009) (construing "all disputes" clause in arbitration agreement as mutual in contract absent other language to the contrary because of public policy favoring arbitration); cf. Davis v. Kozak, 267 Cal. Rptr. 3d 927, 942 (Ct. App. 2020) (explaining repeated use of "I agree" in agreement does not make arbitration clause covering "all claims" unilateral).  Additionally, the Employment Agreement has other provisions demonstrating SDG&E's intent to be bound to the arbitration clause; for example, the Employment Agreement also provides that "SDG&E will have" certain equitable remedies available to it "pursuant to [the Employment Agreement's] arbitration provision." (Doc. No. 7, Boland Decl., Ex. B.)  Thus, in light of the federal and California policy favoring arbitration, Goldman, Sachs & Co., 747 F.3d at 742; Roman, 92 Cal. Rptr. 3d at 157, the Court construes the Employment Agreement's arbitration clause as mutually binding.

Moreover, Plaintiff's contentions that the Employment Agreement's terms are overly one-sided are generally not persuasive.  Plaintiff argues that the agreement is one-sided because "it appears . . . that the purported mutuality of the arbitration agreement is limited to the extent to which SDG&E can bring an equitable relief action against Plaintiff in arbitration for breaching certain sections of the agreement and without proving any damages." (Doc. No. 11 at 16.)  However, such a characterization misinterprets the terms of the Employment Agreement.  As previously discussed, SDG&E intended to be bound by the arbitration provision.  Additionally, the arbitration provision clearly states that "any

dispute regarding any aspect" of the agreement "will be submitted to arbitration," in which both parties are entitled to "[a]ny equitable or provisional remedy that would be available from a court of law."[5] (Doc. No. 7, Boland Decl., Ex. B.) Thus, both parties have similar remedies available to them, making the Employment Agreement's terms, generally, not substantively unconscionable. On the other hand, the parties agree that the arbitration clause's cost-shifting provision, which requires a party who brings arbitrable claims to a non-arbitration proceeding to pay the costs of the other resulting from such action, should not be enforced. (See Doc. No. 11 at 17; Doc. No. 14 at 9-10.) As a result, the Court's inquiry turns to whether the Employment Agreement should be saved by severing this provision from it.

### 3. Severability

In Armendariz, the Supreme Court of California explained that California Civil Code section 1670.5(a) gives trial courts "discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement." 24 Cal. 4th at 122. However, the Armendariz court explained that the latter course is an option "only when an agreement is 'permeated' by unconscionability." Id. "The overarching inquiry is whether the interests of justice . . . would be furthered by severance." Id. at 124 (omission in original) (internal quotation marks omitted) (citation omitted).

In this case, the Court concludes that severing the cost-shifting provision in the arbitration clause is appropriate. The Employment Agreement is not "permeated" with unenforceable terms in this instance. The remaining provisions in the agreement are not

---

[5] In a footnote, Plaintiff also points to section 11 of the Employment Agreement, arguing that it is overly one-sided because it allows SDG&E to pursue equitable relief in arbitration without showing actual damages or posting a bond. (Doc. No. 11 at 16 n.9.) Plaintiff cites generally to Carbajal v. CWPSC, Inc., 199 Cal. Rptr. 3d 332, 350 (Ct. App. 2016), to argue that this provision at least in part makes the agreement substantively unconscionable. (Doc. No. 11 at 16.) However, Carbajal's reasoning does not apply in this case. See Khraibut v. Chahal, No. C15-04463 CRB, 2016 WL 1070662, at *12 (N.D. Cal. Mar. 18, 2016). In the first place, Carbajal did not apply the FAA. 199 Cal. Rptr. 3d at 343. Also, its finding of "moderate" substantive unconscionability rested on the interplay between a waiver of an element required for injunctive relief, a carve-out provision that allowed only the defendant to seek an injunction outside of arbitration, and other unreasonably one-sided terms. See id. at 350-54.

otherwise unduly one-sided. Also, the interests of justice favor severance because public policy favors the enforcement of arbitration agreements, Armendariz, 24 Cal. 4th at 126, and the parties specifically agreed in the Employment Agreement that any unenforceable terms should be severed from it, (Doc. No. 7, Boland Decl., Ex. B). Thus, the Court severs and strikes the cost-shifting provision, making the Employment Agreement's arbitration provision otherwise valid and enforceable. Accordingly, because a valid, enforceable arbitration agreement exists and encompasses Plaintiff's non-PAGA claims against Defendants,[6] the Court compels Plaintiff to submit these claims to arbitration.[7]

## II.     Plaintiff's Class Claims

Having determined that Plaintiff must submit his non-PAGA claims to arbitration, the Court then turns to whether those claims should be arbitrated on an individual basis. Plaintiff brings each of his claims against Defendants on his own behalf and on behalf of a putative class of others similarly situated. (Doc. No. 1-2, Compl. ¶ 1.) Defendants argue that, because the Employment Agreement's arbitration clause does not provide for class arbitration, Plaintiff must arbitrate his claims on an individual basis. (Doc. No. 7 at 16.)

The Court agrees. The Supreme Court has clearly stated that "that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010) (emphasis in original). Additionally, "neither silence

---

[6] Sempra can properly enforce the Employment Agreement's arbitration clause even though it is not a signatory to the agreement. Non-signatories may properly "invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013). California law allows non-signatories to enforce arbitration agreements when the plaintiff alleges that the non-signatory and signatory were "acting as agents of one another and every cause of action alleged identical claims against" each. Garcia v. Pexco, LLC, 217 Cal. Rptr. 3d 793, 797 (Ct. App. 2017); see also Thomas v. Westlake, 139 Cal. Rptr. 3d 114, 120-21 (Ct. App. 2012). Thus, because Plaintiff alleged in his complaint that Defendants at all times were acting as agents of one another, (Doc. No. 1-2 ¶ 11), and made identical claims against them, (see generally id.), Sempra is entitled to compel Plaintiff to submit his claims to arbitration.

[7] The Court need not address Plaintiff's assertion that the Offer Letter is fully integrated into the Employment Agreement and not controlling in this case because the Employment Agreement's arbitration clause is enforceable on its own.

nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself," that is, "the individualized form of arbitration envisioned by the FAA." Shivkov v. Artex Risk Sols., Inc., 974 F.3d 1051, 1069 (9th Cir. 2020) (citations omitted). Thus, because the Employment Agreement never mentions class arbitration, (Doc. No. 7, Boland Decl., Ex. B), it does not permit it, Shivkov, 974 F.3d at 1069. Accordingly, Plaintiff must submit his non-PAGA claims to arbitration on an individual basis.

### III.    Whether to Stay the Action

Defendants ask that the Court stay the action pending arbitration of Plaintiff's non-PAGA claims. (Doc. No. 7 at 17.) "Although the [FAA] provides for a stay pending compliance with a contractual arbitration clause . . . a request for a stay is not mandatory." Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (omission in original) (internal quotation marks omitted) (citation omitted). Moreover, the Supreme Court has explained that where, as here, there are some claims subject to arbitration, and some claims that are not subject to arbitration, the "decision [regarding whether the entire case should be stayed pending the outcome of arbitration] is one left to the district court . . . as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983). Accordingly, the Court, in its discretion, dismisses Plaintiff's non-PAGA claims from this action without prejudice.[8] The Court also exercises its discretion to decline to stay the proceedings on Plaintiff's PAGA claim. The Court is not persuaded by Defendants' arguments that the PAGA claim should await the resolution of the arbitration.

### Conclusion

For the foregoing reasons, the Court grants Defendants' motion to compel arbitration. The Court orders Plaintiff to submit claims one through ten in his complaint to arbitration pursuant to the Employment Agreement on an individual basis and dismisses

---

[8]    Plaintiff is free to move to re-open the case to confirm or enforce the arbitration award.

those claims from this action without prejudice. Further, the Court declines to stay proceedings on Plaintiff's PAGA claim.

**IT IS SO ORDERED.**

DATED: November 2, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT